FILED
U.S. District Court
District of Kansas

AUG 14 2025

Clerk, U.S. District Court
By _____ Deputy Clerk

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

---

**LARRY-DARNELL: CRAYTON, individually,**
**and CRAYTON ADMINISTRATIVE TRUST,**
**by and through its Trustee, LARRY-DARNELL: CRAYTON,**
Plaintiffs,

v.

**THE BOEING COMPANY EMPLOYEE BENEFIT PLAN,**
**THE BOEING COMPANY,**
**BANK OF AMERICA, N.A.,**
and DOES 1–10, inclusive,
Defendants.

Case No.: **6:25-cv-1175-JWB-BGS**

---

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
**Jury Trial Demanded**
**Date:** August 13, 2025

# TABLE OF CONTENTS

1. Statement of the Case
2. Jurisdiction and Venue
3. Parties
4. Factual Allegations
   - Physical Absence from Kansas and the United States
   - June 2018 – Fraud Discovered
   - Boeing's Role & ERISA Admission
   - 2018–2020 – First Fraud Claim Ignored
   - Tolling of Limitations Period
   - 2022–2023 – Second Fraud Claim
   - Documentary Proof of Fraud & Concealment
   - Credit Damage from Fraudulent Accounts
   - Severe Health and Life Impact
   - Hospital Ordeal
   - UCC-1 Financing Statement Filed
5. Causes of Action (Counts I–IX)
6. Prayer for Relief
7. Regulatory Notice
8. Jury Demand
9. Exhibits List
10. Civil Cover Sheet (Pre-filled Text)

## STATEMENT OF THE CASE

Plaintiff, acting as Trustee of the Crayton Administrative Trust, brings this action to recover wrongfully withheld ERISA plan benefits and related damages arising from a coordinated course of misconduct by The Boeing Company, its Employee Benefit Plan, and Bank of America, N.A. Despite documentary proof that Plaintiff was the victim of identity theft — including Defendants' own written admissions — both Boeing and Bank of America refused to reissue the funds. The wrongful deprivation spanned years, causing Plaintiff severe financial harm, substandard and life-threatening medical treatment abroad, the forced liquidation of personal property by his fiancée, intervention by the U.S. Embassy, and lasting physical impairment. Plaintiff also suffered credit damage from fraudulent accounts placed on his credit reports. The claims herein seek full compensatory and punitive damages, enforcement of Plaintiff's perfected UCC-1 lien, and all other equitable relief available under ERISA, Kansas law, and federal banking statutes.

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) because this action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.
2. Supplemental jurisdiction exists under 28 U.S.C. § 1367 for state-law claims because they form part of the same case or controversy under Article III of the United States Constitution.
3. Venue is proper in this District under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants transact business in this District.

# PARTIES

4. **Plaintiff**: The Crayton Administrative Trust is a private express trust duly constituted under Kansas law on June 13, 2025, as the public-facing trust for litigation, claims administration, and other external transactions, to protect the privacy and fiduciary integrity of the head trust and related private trusts.

5. **Trustee**: The beneficial interest in the claims originated with Larry-Darnell: Crayton personally, was transferred to the Larry Darnell Crayton Trust (formed in 2022), then to the Larry Darnell Crayton Living Man Trust (formed in 2024, as the head trust), and was ultimately assigned to the Crayton Administrative Trust in 2025. Each transfer of rights was documented by trustee resolutions and assignments. The Crayton Administrative Trust was formed by its original trustee, Terry Carnell Crayton, under a mutual fiduciary arrangement in which Larry-Darnell: Crayton also formed a separate trust for Terry Carnell Crayton.

6. **Defendant Plan**: The Boeing Company Employee Benefit Plan ("Plan") is an ERISA-governed employee benefit plan administered in part within this District.

7. **Defendant Boeing**: The Boeing Company is a Delaware corporation with its principal place of business in Arlington, Virginia, and is the plan sponsor and administrator of the Plan.

8. **Defendant Bank of America**: Bank of America, N.A., is a national banking association chartered under the laws of the United States, authorized to conduct business in Kansas, and transacts substantial business within this District.

9. **DOES 1–10**: Plaintiff is presently unaware of the true names and capacities of DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Each of the fictitiously named defendants is responsible in some manner for the occurrences alleged herein and for Plaintiff's damages.

# FACTUAL ALLEGATIONS

## Physical Absence from Kansas and the United States

10. From 2004 until June 24, 2024, Plaintiff resided in the Philippines and never entered Kansas — not even for a visit — during that entire period. The only U.S. visit in that time was a 10-day trip in 2011 to Philadelphia, Pennsylvania, to attend a medical transcription convention as a consultant for a private company, after which Plaintiff flew directly back to the Philippines. The Boeing pension check at issue in this case was issued in November 2015 — more than four years after Plaintiff had returned to the Philippines from the 2011 trip — and during a period when Plaintiff had not been in the United States for years. Furthermore, during the relevant time, Plaintiff's U.S. passport was revoked due to a child support enforcement action, making it legally and physically impossible for him to re-enter the United States. Plaintiff submitted copies of his valid identification documents, showing his overseas residence, along with his fraud report to Bank of America. Despite having this definitive proof, Bank of America failed to resolve the matter and continued to claim the fraud was under investigation.

## June 2018 – Fraud Discovered

11. In June 2018, Plaintiff attempted to open a new account with Bank of America for legitimate personal banking needs. The online application was denied because Bank of America's system reflected that an account already existed in Plaintiff's name and that there were overdraft fees associated with that account.

12. Plaintiff immediately contacted Bank of America to dispute this information and request documentation. During that call, a representative informed Plaintiff that a pre-existing account had been opened in his name without his authorization. The account ledger showed a large deposit, which was traced to The Boeing Company.

## Boeing's Role & ERISA Admission

13. Plaintiff contacted Boeing to investigate the source of the deposit. Boeing stated that a check had been issued from Plaintiff's Boeing 401(k) retirement plan and mailed to Plaintiff's mother's U.S. address. Plaintiff had never requested such a distribution nor authorized anyone to do so.

14. At the time the Boeing pension check was issued in November 2015, Plaintiff had forgotten about his 401(k) account and believed he would not be eligible to access the funds until retirement age (approximately 63–65 years old). Plaintiff had no reason to request, and did not request, any early distribution.

15. The funds represented a 401(k) distribution governed by ERISA.

16. In a letter dated October 9, 2023 (Exhibit A), Boeing acknowledged Plaintiff's position: *"You have indicated you did not authorize anyone or give permission to anyone to*

*request your benefits… You faxed a copy of the Identity Theft Report… and reported that you identified a person, a family member, as a suspect to this fraud."*

17. That same letter referenced Plaintiff's "ERISA-protected benefits," confirming that the funds were subject to ERISA protections.

18. Despite acknowledging the fraud and naming a suspect, Boeing refused to reissue the funds, and Bank of America likewise refused to restore or reissue the funds after confirming Plaintiff was not the person who opened the fraudulent account.

## 2018–2020 – First Fraud Claim Ignored

19. Plaintiff filed an initial fraud complaint with Bank of America in 2018 under Claim No. **18JAN2018-452345**, covering the unauthorized account and the fraudulent deposit of the Boeing check.

20. During the nearly two years that the claim remained open, Bank of America never requested that Plaintiff complete or submit an Identity Theft Affidavit for the first claim.

21. Plaintiff called Bank of America at least once per month to request updates, often before the expiration of their "45-day investigation" periods.

22. In late 2020, Bank of America closed the claim and falsely informed Plaintiff that the statute of limitations had expired.

## Tolling of Limitations Period

22A. Any applicable statute of limitations is tolled under Kansas law and federal common law principles because Defendants fraudulently concealed the facts necessary for Plaintiff to discover the wrongful diversion of funds. Bank of America and Boeing repeatedly represented that they were conducting ongoing "45-day investigations" while failing to disclose the results or provide account records. Under K.S.A. 60-513(a)(3) and related equitable tolling doctrines, the limitations period did not begin to run until 2023, when Defendants provided written acknowledgment of the fraud.

## 2022–2023 – Second Fraud Claim

23. In January 2023, Bank of America opened two new fraud case files — Claim No. **23JAN2023-606596** for the checking account and Claim No. **23JAN2023-606597** for the savings account — and, for the first time, requested that Plaintiff complete the Identity Theft Affidavit.

24. On April 11, 2023 (Exhibit B), Bank of America sent Plaintiff a letter stating: *"We've completed our research… and determined you aren't the person responsible for opening the account."*

25. Despite this finding, Bank of America refused to restore the funds, close the fraudulent accounts, or coordinate with Boeing to ensure reissuance of the 401(k) distribution.

26. This refusal came even after both Defendants had direct knowledge of the fraud.

**Documentary Proof of Fraud & Concealment**

27. On January 15, 2019, Plaintiff filed a Wichita Police Department Incident Report #19C501336 (Exhibit D), listing the Boeing Company pension check for $95,776.88 as stolen property and naming Bank of America as the bank of first deposit.

28. The check, issued November 19, 2015 (Exhibit C), was deposited into a Bank of America account that Plaintiff did not open, authorize, or control.

29. Plaintiff sent Bank of America multiple written requests for account-opening documentation, signature cards, and transaction histories related to the fraudulent accounts (Exhibit E). These requests were ignored.

30. In 2023, Plaintiff completed the full notarized Identity Theft Affidavit (Exhibit F) and faxed it to Bank of America on five separate occasions, retaining confirmation receipts for each transmission. Despite these records, Bank of America repeatedly claimed non-receipt, further delaying resolution.

**Credit Damage from Fraudulent Accounts**

31. In addition to financial loss and withheld benefits, Plaintiff's credit reports were negatively impacted by fraudulent accounts opened in his name. These unauthorized accounts, stemming from the same identity theft described herein, have appeared on Plaintiff's credit history, lowering his credit score and impairing his ability to secure housing, loans, and other financial services. Despite being notified of the fraud, Defendants failed to take steps to assist in removing these accounts or mitigating the credit damage. Plaintiff has received multiple denial letters from creditors, including banks, lenders, and other financial institutions, which have prevented him from obtaining credit, securing stable housing, and reestablishing his life in the United States after returning from abroad.

---

# Severe Health and Life Impact

32. At the time of these events, Plaintiff was living abroad in the Philippines with his family and suffered from serious health issues requiring medical attention available only in the United States.

33. Because his ERISA benefits were wrongfully withheld and fraudulently diverted, Plaintiff was unable to return to the United States for treatment, resulting in worsening health.

34. The deprivation of funds also left Plaintiff homeless for extended periods when visiting the U.S., relying on minimal financial support from his mother to survive. Plaintiff's

inability to access his own funds caused humiliation, reputational harm, and the breakdown of relationships, as many people did not believe his account of events — despite Defendants having documentary proof all along that Plaintiff was telling the truth.

## Hospital Ordeal (38A)

38A. While residing in the Philippines, Plaintiff was admitted to a private hospital for medical treatment. Because his ERISA benefits had been wrongfully withheld, Plaintiff could not pay for proper care. As a result, the treatment he received was grossly substandard, to the point it could be compared to that of a war prisoner. Plaintiff was fed only milk through a feeding tube for forty (40) consecutive days, during which he lost approximately 100 pounds in just thirty (30) days. His physical condition deteriorated so severely that upon release he had no control over his limbs and was pushed out in a wheelchair. Plaintiff believes this course of treatment was life-threatening and potentially intended to cause his death. At his family's urgent demand, the U.S. Embassy intervened to arrange his return to the United States. It took two months of recovery before Plaintiff was strong enough to fly, during which time his fiancée was forced to sell personal belongings to cover expenses. Plaintiff obtained a temporary passport from the U.S. Department of State solely for the purpose of returning home to seek proper medical care.

## UCC-1 Financing Statement Filed

40. On August 2, 2025, Plaintiff filed UCC-1 Financing Statement No. 121659262 with the Kansas Secretary of State, naming Bank of America, N.A. and The Boeing Company as debtors and perfecting a $500,000,000 security interest in all rights, titles, interests, proceeds, accounts, equitable interest, and property or commercial claims related to the unauthorized use or administration of the private trust estate of the Crayton Administrative Trust. This lien remains active and provides public notice of Plaintiff's perfected legal and equitable interest in the subject matter of this litigation.

# CAUSES OF ACTION

**Count I – Denial of Benefits (ERISA)**
41. Plaintiff incorporates paragraphs 1–40 as though fully set forth herein.
42. Under 29 U.S.C. § 1132(a)(1)(B), a participant or beneficiary may bring a civil action to recover benefits due, enforce rights under the plan, or clarify rights to future benefits.
43. Defendants Boeing and the Plan wrongfully denied benefits owed to Plaintiff in violation of ERISA and the plan terms.
44. This denial occurred despite actual knowledge of fraud and Plaintiff's lack of authorization, violating 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1.

**Count II – Breach of Fiduciary Duty (ERISA)**
45. Plaintiff incorporates all preceding paragraphs.
46. 29 U.S.C. § 1104(a)(1) requires fiduciaries to act solely in the interest of participants and beneficiaries with the care, skill, prudence, and diligence of a prudent person.
47. Boeing and the Plan breached these duties by failing to safeguard plan assets, failing to act upon confirmed fraud, and refusing to reissue benefits.
48. Plaintiff seeks equitable relief under 29 U.S.C. § 1132(a)(3), including surcharge, injunction, and removal of breaching fiduciaries.

**Count III – Conversion (Kansas UCC and Common Law)**
49. Plaintiff incorporates all preceding paragraphs.
50. Under K.S.A. 84-3-420(a), an instrument is converted when it is taken by transfer other than to a person entitled to enforce it.
51. Bank of America negotiated Plaintiff's Boeing check without authorization, exercising wrongful dominion over trust property.

**Count IV – Fraudulent Misrepresentation & Concealment**
52. Plaintiff incorporates all preceding paragraphs.
53. Defendants knowingly made false statements about ongoing "investigations" and concealed that no genuine investigation was conducted.
54. Plaintiff reasonably relied on these statements to his detriment, causing financial loss and emotional harm.

**Count V – Intentional Infliction of Emotional Distress**
55. Plaintiff incorporates all preceding paragraphs.
56. Defendants' conduct — knowingly depriving Plaintiff of life-sustaining funds while abroad, ill, and separated from family — is extreme, outrageous, and beyond all bounds of decency.
57. This conduct caused severe emotional distress and physical harm.

**Count VI – Civil Conspiracy**
58. Plaintiff incorporates all preceding paragraphs.
59. Boeing and Bank of America agreed, explicitly or implicitly, to shift blame and delay resolution despite knowing the fraud facts.
60. Each is jointly and severally liable for the damages caused.

**Count VII – Negligence & Gross Negligence**

61. Plaintiff incorporates all preceding paragraphs.

62. Bank of America owed a duty to verify identity before opening accounts or negotiating checks, per KYC/AML regulations under the Bank Secrecy Act (31 U.S.C. § 5318).

63. Bank of America breached this duty, and such breach was grossly negligent and reckless.

**Count VIII – Federal Banking Violations**

64. Plaintiff incorporates all preceding paragraphs.

65. Bank of America's conduct constitutes violations of:

    a. 18 U.S.C. § 1344 – Bank Fraud;

    b. 18 U.S.C. § 656 – Theft, Embezzlement, or Misapplication by Bank Officer or Employee;

    c. Bank Secrecy Act requirements (31 U.S.C. § 5318).

**Count IX – Violation of Federal Benefit Protections**

66. Plaintiff incorporates all preceding paragraphs.

67. If the funds are deemed federally protected benefits, Defendants' actions violated 42 U.S.C. § 407 and related regulations.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for:

A. No less than $50,000,000 in compensatory and punitive damages;

B. Equitable relief including a constructive trust over the wrongfully withheld funds;

C. Injunction requiring immediate release of all withheld funds;

D. Recognition and enforcement of Plaintiff's perfected UCC-1 lien (No. 121659262);

E. Pre- and post-judgment interest as allowed by law;

F. Costs of suit and reasonable attorney's fees where recoverable;

G. Such other relief as the Court deems just and proper;

H. Plaintiff further requests that the Court take judicial notice that the conduct alleged herein constitutes violations of both civil and criminal statutes, and reserves the right to provide all evidence gathered in this case to federal and state law enforcement for potential prosecution.

# REGULATORY NOTICE

Plaintiff reserves the right to submit evidence of Defendants' conduct to the U.S. Department of Labor (ERISA), the Consumer Financial Protection Bureau (CFPB), the Office of the Comptroller of the Currency (OCC), and applicable state banking regulators.

---

**JURY DEMAND**
Plaintiffs demand trial by jury on all issues so triable.

DATED: August 13, 2025

---

*Larry- Darnell: Crayton Plaintiff Pro Se*

Larry-Darnell: Crayton, Plaintiff, Pro Se
c/o 1555 W. 23rd St N #122
Wichita, Kansas 67204-6113
316-945-6113
trustee.crayton@pm.me

---

*Larry-Darnell: Crayton, Trustee*
*for Crayton Administrative Trust*

Larry-Darnell: Crayton, Trustee,
Crayton Administrative Trust
c/o 1555 W. 23rd St N #122
Wichita, Kansas 67204-6113
316-945-6113